Robert L. MILLER, Robert J. Miller and Michael Miller, individual, Plaintiffs,

v.

AUTO–ALLIANCE INTERNATIONAL, INC., a Delaware corporation, and Metropolitan Life Insurance Company, a New York mutual insurance company, Defendants.

No. 95–40458.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 14, 1997.

Brian L. Lambrix, Monroe, MI, for Plaintiffs.

David M. Davis, Birmingham, MI, for Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Plaintiffs, Robert L. Miller, Robert J. Miller and Michael Miller (collectively "Plaintiffs"), commenced this action in December, 1995, alleging breach of contract and violation of the Employee Retirement Income Security Act, 29 U.S.C. section 1001 et seq. ("ERISA") against defendants, Auto–Alliance International Inc. ("Auto–Alliance") and Metropolitan Life Insurance Company ("MetLife") (collectively "Defendants").

Plaintiffs seek accidental death and dismemberment ("AD & D") benefits they claim were wrongfully denied to them by MetLife. On December 16, 1996, cross-motions ·for summary judgement were filed. The parties dispute several issues including: (1) the standard of review which this court should invoke upon review of MetLife's denial of claim ben-

efits; (2) whether the decedent's death was the result of an "accident" as defined in the plan; and (3) whether the decedent's actions constituted "purposeful injury" as defined in the plan. This court, pursuant to Local Rule 7.1(e)(2) (E.D.Mich. Nov. 7, 1994), has decided to dispense with oral argument and will decide the motion on the submitted briefs. For the reasons set forth below, this court will grant the defendants' motion for summary judgment and deny the plaintiffs' motion for summary judgment.

## I. BACKGROUND

The decedent, Thomas Miller (the "Decedent"), was employed by Auto–Alliance and participated in its employee group life plan (the "Plan"). The plan provided for basic life and accidental death and dismemberment benefits. With regard to AD & D benefits, the plan states that:

> If you are injured in an accident we will pay [AD & D] Benefits:
> (a) If the accident occurs while you are covered for [AD & D] Benefits, and
> (b) if the accident is the sole cause of the injury ..."

The plan further provides that payment of AD & D shall not be payable for the following exclusions:

> Each of the above losses is not a Covered Loss if it in any way results from, or is caused or contributed to by:
>
>   \*   \*   \*   \*   \*   \*
>
> (d) injuring yourself on purpose. . . .

On May 21, 1994, the decedent was the driver and sole occupant of his passenger car when he proceeded to enter an intersection against a red traffic signal. The decedent's vehicle immediately collided with another vehicle in the intersection. The decedent was pronounced dead at the scene from head injuries suffered during the collision. At the time of the decedent's death, his blood alcohol level was .29 grams of alcohol per 100 milliliters of blood.[1] There is no dispute that the decedent was intoxicated while driving his vehicle.

The decedent had named his father and two brothers as primary beneficiaries under the plan. On June 2, 1994, the beneficiaries filed claims for basic life insurance and AD & D benefits. MetLife paid the basic life insurance benefits per plan guidelines. On October 18, 1994, however, MetLife denied the beneficiaries claim for AD & D benefits. The beneficiaries appealed MetLife's decision on May 1, 1995. On August 28, 1995, MetLife reaffirmed its prior decision and explained their position in a letter stating, in relevant part, that:

> The Auto Alliance Accidental Death & Dismemberment (AD & D) Insurance Plan provides for benefits if, 'you die, or are injured, as a result of an accident.'. . . .
>
> While it is well-known that alcohol consumption at this level [.29] causes mental and physical infirmities such as drowsiness and stupor which impair a person's ability to drive a motor vehicle, and Mr. Miller voluntarily drove while under the influence over the legal limit, we cannot consider this an accidental death as per plan provisions. . . .

In December of 1995 plaintiffs commenced this action for breach of contract based upon the defendant's denial of benefits.

## II. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial. *Martin v. Ohio Turnpike Commission,* 968 F.2d 606, 608 (6th Cir.1992); *Celotex Corp. v. Catrett,* 477

---

1. Under Michigan law, a person with a blood alcohol level of .10% is prohibited from driving

an automobile. *See* M.C.L.A. § 257.625(2).

U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *60 Ivy Street Corporation v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). In other words, the disputed fact must be one which might affect outcome of the suit under the substantive law controlling the issue. *Henson v. National Aeronautics and Space Administration*, 14 F.3d 1143, 1148 (6th Cir.1994). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Accordingly, where a reasonable jury could not find that the non-moving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Feliciano v. City of Cleveland*, 988 F.2d 649 (6th Cir. 1993).

Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party must present more than just some evidence of a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986):

> There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is merely colorable, or is not sig-

nificantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Consequently, the non-moving party must do more than raise some doubt as to the existence of a fact; the non-moving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991).

### III. ANALYSIS

At the outset, this court notes that both parties agree that this action arises under and is controlled by ERISA.

### A. Appropriate Standard of Review

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that benefit determinations are to be reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan." *Id.* at 115, 109 S.Ct. at 956. When the plan provides for the requisite discretionary authority, the highly deferential arbitrary and capricious standard of review is appropriate. *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir.1991); *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir.1996).

The Sixth Circuit has found that "'[t]he arbitrary and capricious standard is the least demanding form of judicial review of administrative action' and that '[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious'". *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir.1989).

The Sixth Circuit, in *Miller*, held that the defendant's claim decisions were reviewable under the arbitrary and capricious standard where the policy language read *"on the basis of medical evidence satisfactory to the*

*Insurance Company." Id.* at 983 (emphasis in original).

Recently, the Sixth Circuit held that plan language requiring a claimant to submit "satisfactory proof of total disability to us" triggered the arbitrary and capricious standard. *Yeager, supra* at 381. The *Yeager* court found no distinction between that language and the language found in *Miller. Yeager,* 88 F.3d at 381.

MetLife urges this court to apply the arbitrary and capricious standard in this case. In support of its position, MetLife cites the following policy language to demonstrate that it had discretionary authority to review claims:

### AD & D Benefits

#### 5. PAYMENT OF BENEFITS

The Accidental Death or dismemberment Benefits for a loss will be paid when we receive notice and satisfactory proof of that loss. The Accidental Death or Dismemberment Benefits for loss of life will be paid to the Beneficiary. All other Accidental Death or Dismemberment Benefit will be paid to you.

\*     \*     \*     \*     \*     \*

### CLAIMS PROCEDURE FOR ACCIDENTAL DEATH OR DISMEMBERMENT BENEFITS

#### 2. CLAIM FORMS

When we receive written notice of a claim we may furnish printed forms for filing proof of the claim. If we do not furnish printed forms within 15 days after you give us notice, you must furnish your own form of proof in writing.

Proof must describe the event the nature and the extent of the cause for which a claim is made; *it must be satisfactory to us.* (emphasis added)

This plan language is almost identical to the plan language found by the Sixth Circuit to trigger the arbitrary and capricious standard of review. See *Miller, supra.; Yeager, supra.* Accordingly, this court will review MetLife's determination under the arbitrary and capricious standard.

This court will briefly address plaintiff's argument that a *de novo* standard of review

is required due to MetLife's "conflict of interest" as both "adjuster" and the claim review authority under the plan.

In *Davis,* the Sixth Circuit quoted the Supreme Court wherein the Court stated that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor[ ] in determining whether there is an abuse of discretion.' " *Davis* at 694 (quoting *Firestone,* 489 U.S. at 115, 109 S.Ct. at 956–57 (internal citation omitted)).

Thus, in *Davis,* the Sixth Circuit concluded the district court was correct in applying the arbitrary and capricious standard to a reviewing committee comprised of management-level employees. The court stated "[a]ny possible conflict of interest should be taken into account as a factor in determining whether the Committee's decision was arbitrary and capricious." *Id.* at 694.

█ This court is not convinced that a "conflict of interest" exists in this case since Auto–Alliance is an administrator with fiduciary responsibilities and not an "adjuster," as plaintiffs claim. Assuming, *arguendo,* that such a conflict does exist, plaintiffs' argument, that where a conflict of interest exists *de novo* review is required, is nevertheless without merit. Neither *Bruch* nor *Davis* hold that *de novo* review is required in cases of conflict of interest. Instead, both prescribe that any conflict of interest is to be considered as a factor by the court in its analysis of the administrator's decision. Accordingly, plaintiffs' argument that *de novo* review is required cannot prevail.

### B. MetLife's denial of benefits was appropriate

█ MetLife argues that summary judgment is warranted because no genuine issue of material fact exists as to the reasonableness of its decision that decedent's death was not accidental.

Specifically, MetLife argues that under ERISA case law, a fatality is not accidental if the decedent "either actually expected or reasonably should have expected the ultimate

result which befell him." *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1086 (4th Cir.1990). In the instant case, MetLife contends that given common knowledge and the current opprobrium in the media and legal system for driving while intoxicated, the decedent should have reasonably foreseen that death or serious injury may result from his actions.

Significantly, MetLife notes several recent cases in this circuit where the court has found that a fatal crash involving a person driving while intoxicated was not considered "accidental."

In both *Fowler v. Metropolitan Life Ins. Co.*, 938 F.Supp. 476 (W.D.Tenn.1996) and *Cates v. Metropolitan Life Ins. Co.*, Case No. 1:95 CV 352 (E.D.Tenn.1996), the district courts found that the denial of claims in circumstances similar to the instant case was not unreasonable under the arbitrary and capricious standard. The court in *Fowler* noted:

> As pointed out by Met Life, the hazards of drinking and driving are widely known and widely publicized. It is clearly foreseeable that driving while intoxicated may result in death or bodily harm.... As the decedent should have foreseen the consequences of driving while intoxicated, Met Life's determination that his death was not accidental was reasonable.

*Id.* at 480.

The court in *Cates* reached a similar conclusion stating that "[i]t is neither unreasonable nor irrational in light of the Plan's provisions for Metropolitan to conclude [Blood Alcohol Level of 00.18] 'rendered the infliction of serous (sic) injury or death reasonably foreseeable....'" *Cates, supra*, Slip Op. at 7.

Met Life argues that its interpretation of "accidental" was reasonable in light of the public's common knowledge of the hazards of drinking and driving and the court decisions interpreting ERISA principles. Accordingly, MetLife concludes, under the arbitrary and capricious standard that this court should not alter MetLife's decision.

Plaintiffs, on the other hand, contend that several courts have held drinking and driving

to be an "accident" within the terms of an AD & D policy. In support of this proposition, plaintiffs cite *Harrington v. New England Life Ins. Co.*, 684 F.Supp. 174 (N.D.Ill. 1988) and *Miller v. American Cas. Co.*, 377 F.2d 479 (6th Cir.1967). Upon reviewing those cases, this court simply cannot accept plaintiffs' assertion.

The *Harrington* decision is completely inapplicable to the instant case. *Harrington* was not an ERISA case; rather it was decided under Illinois law. Moreover, the decedent, who was not intoxicated while driving, crashed his vehicle as a result of a high speed police chase. Nothing in the *Harrington* opinion lends itself to a finding that an accident occurred in this case.

Similar deficiencies exist in the plaintiffs' attempted application of *Miller* to the instant case. *Miller* was also not an ERISA case but was instead a diversity case which relied upon Tennessee state law. Moreover, *Miller*, has been criticized by the Tennessee courts. *See Fowler*, 938 F.Supp. at 479.

This court is not persuaded that *Harrington* and *Miller* provide any support for plaintiffs' argument that a collision involving an intoxicated driver should nevertheless be considered an accident. Plaintiffs have not cited one ERISA case in support of their position. Furthermore, the court is not persuaded that any of the other cases cited by the plaintiffs have any applicability to the instant case.

For instance, *Collins v. Nationwide Life Ins. Co.*, 409 Mich. 271, 294 N.W.2d 194 (1980), was decided under Michigan law and involved drinking one's self to death. *Todd v. AIG Life Insurance Co.*, 47 F.3d 1448 (5th Cir.1995) discussed "accidental" in the context of an autoerotic asphyxiation case. *Barnewold v. Life Insurance Co. of North America*, 633 F.Supp 432 (E.D.La.1986) discussed "accidental death" as a result of a heart attack. Plaintiffs have not sufficiently demonstrated how these cases resolve the issue in this case, namely whether it can be said that an automobile collision caused by a person who was driving while intoxicated and which results in his death or dismemberment can be said to be an "accident."

This court finds that no reasonable trier of fact could find that MetLife's determination to deny benefits under the AD & D policy was unreasonable. Moreover, the court has determined that any possible conflict of interest that MetLife may have had, was not a meaningful factor in its determination. MetLife's determination in this case is consistent and conforms with administrative decisions upheld by courts in previous benefit determination cases. *See Fowler,* supra; *Cates,* supra.

As this court has found MetLife's decision to be reasonable under the arbitrary and capricious standard, there is no need to address Defendant's alternative argument that decedent's death resulted in part from purposefully injuring himself. Accordingly, summary judgment in favor of the defendants is granted and the plaintiffs' motion for summary judgment is denied.

### *ORDER*

**THEREFORE, IT IS HEREBY OR-DERED** that the defendants', Auto–Alliance Inc., and Metropolitan Life Insurance Company, motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) is **GRANTED** and plaintiffs', Robert L. Miller, Robert J. Miller, and Michael Miller, motion for summary judgment is **DENIED.**

**IT IS FURTHER ORDERED** that a final judgment be entered in favor of the defendants, Auto–Alliance Inc., and Metropolitan Life Insurance Company, and that the plaintiffs, Robert L. Miller, Robert J. Miller, and Michael Miller, take nothing.

**SO ORDERED.**

### *JUDGMENT*

This action came before this court, the Honorable Paul V. Gadola, District Judge presiding, and the issues having been fully presented and the court being fully advised in the premises, and a decision having been duly rendered,

**IT IS HEREBY ORDERED AND ADJUDGED** that the plaintiffs, Robert L. Miller, Robert J. Miller and Michael Miller, take nothing in this action against the defendants, Auto–Alliance International, Inc., and Metro-

politan Life Insurance Company, on plaintiffs' December 26, 1995 complaint which is **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that the clerk of the court serve a copy of this judgment by United States mail on counsel for the parties named in the caption above.

**SO ORDERED.**