**Fred NELSON, Plaintiff,**

v.

**SUN LIFE ASSURANCE COMPANY OF CANADA, a foreign corporation, Defendant.**

No. 2:96–CV–177.

United States District Court,
W.D. Michigan,
Northern Division.

April 8, 1997.

John T. Reardon, Peterson, Beauchamp, DeGrand, Reardon & Hall, P.C., Escanaba, MI, for Fred Nelson.

Gloria K. Miller, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, MI, for Sun Life Assur. Co. of Canada.

### OPINION REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT

QUIST, District Judge.

This is a dispute over an employee benefits plan. Plaintiff, now deceased, was the sole beneficiary under a contract of insurance issued by Defendant to LeRoy Hardwick. On November 3, 1995, Hardwick became intoxicated and was killed due to a cervical spine fracture suffered during a single motor vehicle accident in Delta County, Michigan. Plaintiff applied for and received a life insurance benefit from Defendant in the amount of $14,000. However, an additional $14,000 in accidental death benefits was denied. Plaintiff filed suit seeking the accidental death benefit. Now before the Court are cross-motions for summary judgment. The parties have agreed that the issue is a legal one, and may be decided on the briefs.

Defendant argues that it is entitled to summary judgment because under the "arbitrary and capricious" standard of review, the denial of benefits was proper. Defendant submits that even under a *de novo* standard of review, summary judgment would still be proper because: 1) Hardwick's death was not accidental as defined by the governing policy and case law, and 2) the policy exclusions preclude recovery. Plaintiff asserts that Defendant's denial of his claim should be reviewed under a *de novo* standard. He argues that the policy covers the accidental injury at issue and that the exclusion relied upon by Defendant does not apply.

### Facts

LeRoy Hardwick was driving on an unlighted portion of Highway U.S. 2–41 in Delta County, Michigan on November 3, 1995, at 8:25 P.M. While passing another vehicle, he lost control of his vehicle, rolled over in the median, and was killed. At the time, Hardwick's alcohol level was .18 grams per 100 milliliters of blood, with the legal limit in Michigan being .10 grams. The death certificate stated that the cause of death was "cervical spine fracture, due to (or as a consequence of) motor vehicle accident, due to (or as a consequence of) alcohol intoxication."

Plaintiff, listed as the sole beneficiary under Hardwick's policy of insurance, filed a claim on November 22, 1995. Following a review of the police and toxicology reports, Defendant denied the claim for accidental death and dismemberment benefits, and granted only the basic life insurance benefit. Defendant informed Plaintiff in a letter dated February 6, 1996, that the company deemed Hardwick's death not to be an "accident" under the policy because Hardwick voluntarily and intentionally committed the act of driving under the influence from which a reasonable person should have foreseen that death or injury might result. Defendant also found that driving under the influence of alcohol constituted an illegal act that triggered an exclusion from coverage under the policy. The decision was appealed and reaffirmed by Defendant in a letter dated March 14, 1996.

### Discussion

#### 1. Legal Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. Material facts are facts which are defined by substantive law and which are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* This standard requires the non-moving party to present more than a scintilla of evidence to defeat the motion. *Id.* at 251, 106 S.Ct. at 2511.

A moving party who does not having the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Id.; Frank v. D'Ambrosi,* 4 F.3d 1378, 1384 (6th Cir.1993). The court must draw all inferences in a light more favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

#### 2. Analysis

■ The legal issue before the Court involves rights under an Employee Welfare Benefit Plan regulated by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1002–1461. Denial of benefits under an ERISA plan is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80

(1989). In the exceptional case where the plan clearly confers discretion, the determination is reviewed using an "arbitrary and capricious" standard. *Anderson v. Great West Life Assurance Co.*, 942 F.2d 392, 394 (6th Cir.1991). Where proof of eligibility for benefits must be "satisfactory" to the company, courts have characterized the company's authority as discretionary within the meaning of *Bruch*. *See, e.g., Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 983–84 (6th Cir.1991); *Bali v. Blue Cross and Blue Shield Ass'n*, 873 F.2d 1043, 1047 (7th Cir. 1989). However, the issue of discretion and its interplay with language requiring "satisfactory proof" is pending before the Sixth Circuit in the case of *Perez v. Aetna Life Ins. Co.*, 96 F.3d 813 (6th Cir.1996), *reh. en banc granted and judgment vacated*, 106 F.3d 146 (6th Cir.1997). To date, where the grant of discretion on a given decision in the plan is clear, the "arbitrary and capricious" standard applies. *Anderson*, 942 F.2d at 394. Under this standard, reversal is required only if the decision was in bad faith, not supported by substantial evidence, or is erroneous on a question of law. *Nevill v. Shell Oil Co.*, 835 F.2d 209, 212 (9th Cir.1987).

■ In the instant case, the policy provides that the proof of claim presented by the beneficiary must be "satisfactory to Sun Life." (Stipulated Facts, Ex. 1 at 34.) Depending upon the Sixth Circuit's resolution in *Perez*, such a degree of discretion would indicate reversal only for arbitrariness or caprice. However, this issue is academic. Even assuming *de novo* review, the facts and case law direct that the denial of benefits in this case was proper. The record demonstrates that the fatality at issue does not meet the threshold definitional test of "accidental bodily injury," and that the exclusion for "intentionally self-inflicted injuries" applies.

The policy defines accidental bodily injury, which is covered under the policy, as "bodily harm caused solely by external, violent and accidental means which is sustained directly and independently of all other causes." (Stipulated Facts, Ex. 1 at 11.) The death in this case was not solely caused by external and accidental means, nor was it sustained

independently of all other causes. The death certificate reported that the spinal fracture was due to a motor accident, which itself was due to alcohol intoxication. As a matter of common sense and reasonableness, there can be no question that but for the intoxication, the mishap might well not have happened. *See Smith v. Life Ins. Co. of North America*, 872 F.Supp. 482, 485 (W.D.Tenn.1994) (holding that decedent's voluntary consumption of alcohol, resulting in a level of .23, was at least a partial cause of vehicular collision, precluding accidental benefits).

The parties have devoted a large portion of their briefs to a discussion of *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077 (1st Cir.1990). That case is instructive. It requires that a court first try to ascertain the insured's actual expectations, and then to ask whether a similarly situated reasonable person "would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct." *Id.* at 1088. The *Wickman* test favors Defendant in the case at bar. All drivers know, or should know, the dire consequences of drunk driving. Thus, the fatal result that occurred in this case should surprise no reasonable person. While Justice Cardozo's dissent in *Wickman* presents a well-articulated legal analysis in and of itself, the better-reasoned, subsequent cases with facts more closely aligned to those in the case at bar, adopt the view set forth in *Wickman*'s majority opinion.

The present case is similar to *Fowler v. Metropolitan Life Ins. Co.*, 938 F.Supp. 476 (W.D.Tenn.1996). In that case the driver lost control of his vehicle, traveled across the road, struck a tree, and was killed as a result of massive head trauma. At the time, he had a blood alcohol content of .26 percent, well over the legal limit. Denying the claim for accidental death benefits, the insurance company determined that death resulted at least in part from the decedent's blend of drinking and driving. The court rejected the plaintiff's argument that the plan language is ambiguous and should be construed against the company. *Id.* at 479–80. The court upheld the denial of benefits in light of plan language comparable to that in the case at bar. *See id.*

The policy exclusion for self-inflicted injuries also applies in this case. There can be no dispute that the voluntary consumption of alcohol, in conjunction with the high blood content, would seriously impair Hardwick's judgment and ability to control his vehicle. *See Fowler,* 938 F.Supp. at 480. Plaintiff asserts that in order to find no coverage, the Court must conclude that the "death-dealing injury was intentional and not merely foreseeable." (Plaintiff's Response at 12.) This assertion misstates the law and would virtually require a suicide to meet the test. Instead, case law makes clear that a decedent need not intend to die in order for the injury to be intentional. Those who play Russian roulette with the "fanciful expectation that fate w[ill] inevitably favor them" are patently unreasonable. *Wickman,* 908 F.2d at 1087. And as the *Fowler* court pointed out, many "federal courts have … recognized that foreseeable harm resulting from … intentional actions is not accidental." *Fowler,* 938 F.Supp. at 480. In *Holsinger v. New England Mutual Life Ins. Co.,* 765 F.Supp. 1279 (E.D.Mich.1991), the court found that overdosing on codeine was not an accident even if the insured did not intend or expect to die. *Id.* at 1282. As in *Holsinger,* Hardwick intentionally inflicted an "injury of a chemical nature, depressing the bodily functions." *See id. See also Sims v. Monumental Gen. Ins. Co.,* 960 F.2d 478, 480 (5th Cir.1992) (ruling that unintentional death from autoerotic asphyxiation was self-inflicted, even though the decedent did not mean to kill himself); *McLain v. Metropolitan Life Ins. Co.,* 820 F.Supp. 169, 178 (D.N.J.1993) (holding that death from cocaine-related cardiac arrest was self-inflicted injury and not accidental). Plaintiff's assertion that drug cases are distinguishable is unsound. Such cases provide useful guidance on the legal issue because the effects of ingesting alcohol, cocaine, codeine and other drugs have similarities in their influence on the nervous system. Moreover, the hazards of drinking while driving or on prescription drugs are well-known to pose serious risks. This Court finds application of the "self-inflicted injuries" exclusion to be eminently reasonable.

Bolstering this conclusion is the case of *Auto-Owners Ins. Co. v. Churchman,* 440 Mich. 560, 489 N.W.2d 431 (1992), cited by Plaintiff himself. Plaintiff relies on *Churchman* for the principle that exclusionary clauses in insurance policies are to be construed strictly in favor of an insured. *Id.* at 567, 489 N.W.2d at 434. Despite that truism, the court's ultimate holding in the case favors Defendant in the case at bar. Reversing the lower court, *Churchman* held that an exclusionary clause for "expected or intended" bodily injury applied to bar an insurance claim. The court found that the murder at issue was committed by a man who, while insane and thus not criminally liable, was nonetheless capable of foreseeing the consequences of his actions within the meaning of the insurance policy language. *Id.* at 572–73, 489 N.W.2d at 436. *Churchman* also noted that insurance companies cannot be held liable for risks they have not assumed. *Id.* at 567, 489 N.W.2d at 434.

In light of the above rulings, Defendant's argument concerning the exclusion for commission of a crime need not be decided.

### *Conclusion*

For the foregoing reasons, summary judgment for Defendant will be granted, and summary judgment for Plaintiff will be denied. An Order consistent with this Opinion will be entered.